## Indemnity Ins. Co. v. Eazor

*Dickie, Robinson & McCamey,* for plaintiff.

*Jerome Solomon* and *Edwin B. Goldsmith,* for defendant.

THOMPSON, J., March 1, 1950.—The pleadings consist of a complaint, an answer and counterclaim, plaintiff's reply and new matter, an answer to new matter and an amended answer and counterclaim.

Plaintiff has sued for a balance of premiums alleged to be due upon a policy of indemnity insurance, which was in effect from March 1, 1946, to March 1, 1947, and which was renewed for a period of a year but was cancelled on April 30, 1947. The amount claimed by plaintiff is $4,366.92 with interest. The policy in question is described by plaintiff as "National Standard Automobile Policy, Liability Form". The losses or claims paid under the policy as shown by exhibit A in the statement of claim amount to $10,452. Although there were 35 claims, which seem to have been settled during the period the policy was in force, almost the entire amount of the loss sustained, to wit, $9,018 was the result of an accident on May 13, 1946, and as a result of which two claimants were paid the following sums:

| | |
|---|---|
| Leroy Harden | $7,563.00 |
| Leroy Harden | 455.00 |
| Mabel Harden | 1,000.00 |

The premium charged under the policy was determined by a rather elaborate method being based in part on the gross receipts of defendant company and in part on the amount of claims paid under the policy, and also other factors which need not now be mentioned, and there is what is called a standard premium, a basic premium and a retrospective premium. Plaintiff contends that the gross premium due it was $13,-664.08 on which there was paid the standard premium

of $3 per hundred upon gross receipts of $321,507.75 or $9,645.23 leaving a balance of $4,018.85 due upon the policy before its renewal and $348.07 after its renewal together with interest.

The original answer admits all the eight paragraphs of the original statement of claim and then avers that defendant was not negligent or liable with respect to the Harden claims mentioned above, but that plaintiffs in the Harden actions were guilty of contributory negligence and that no sums should have been paid in settlement of the Harden claims, but that they should all have gone to trial and that if the Harden claims had gone to trial and had resulted in verdicts for defendant, the total amount of premiums due from defendant would have been $6,430.16 instead of $13,664.08 and that defendant as a result would have overpaid the standard premium paid by him and would be entitled to a refund of $3,215.07.

Defendant avers that he notified plaintiff company that the Harden claimants were contributorily negligent and in his amended answer avers that "defendant notified and informed plaintiff company through its duly authorized representatives not to settle or pay the claims made by said persons as the driver of their automobile had been contributorily negligent in the collision to such an extent as to relieve defendant from liability for their damages".

In the answer to new matter defendant avers:

"Further, defendant was advised by the representatives of plaintiff insurance company that no settlement of said claims would be made by the claim department of said insurance company without notice to defendant."

Plaintiff has moved the court for judgment on the pleadings in the amount claimed and it is this motion upon which we must now pass.

## Question

The question, which we have to determine, may be stated as follows:

Does the insurance company under the policy of insurance issued in this case have the power to determine and pay claims arising under the policy without the approval of the insured?

The policy with which we are concerned contains, inter alia, the following statements:

"As respects such insurance as is afforded by the other terms of this policy under coverages A (Bodily Injury Liability) and B (Property Damage Liability), the company shall (a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof even if such suit is groundless, false or fraudulent; *but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company.*" (Italics supplied.)

Also, the policy contains the following:

"Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the president, vice-president, secretary or assistant-secretary of the company; provided, however, changes may be made in the written portion of the declaration by the agent countersigning this policy, when initialed by such agent or by endorsement issued to form a part of this policy signed by such agent."

Plaintiff relies on Schmidt v. Travelers Insurance Co., 244 Pa. 286, wherein it is said (page 288):

"The rights of the parties are to be determined by the agreement into which they entered. By the provisions of the policy, the insurance company was obliged to defend at its own cost any action against the insured and the entire management of the defense was expressly entrusted to it and the insured was forbidden to settle any claim or to interfere in any negotiations for settlement or in any legal proceeding against it. The insurer was under no obligation to pay in advance of trial and the decision whether to settle or to try was committed to it. The plain words of the policy have no other meaning."

Defendant in his brief does not seem to dispute the holding of the above case, but states that it was based on a standard automobile insurance policy, which was different from the policy now at issue. Defendant's position seems to be that where the policy does not provide for a fixed premium, as we infer was the case in Schmidt v. Travelers Insurance Company, supra, but bases its premium upon calculations, which we have in part enumerated, the insurance company no longer has the unrestricted right to settle claims at its discretion. Defendant argues that this arises because of the fact that the premium finally to be determined may vary with the amount of the claims paid by the insurance company and that the insured should, therefore, have some control over these amounts.

Defendant contends that he should have been consulted before settlements were made, but it seems to us that the logical effect of his contention goes much further and that what he really contends is that no settlement at all can be made by the insurance company without his consent and approval. It is quite obvious that if this were the rule to be applied, the insurance companies in their investigations and settlements would be hampered to such a degree as to make settlements almost impracticable and that if settlements

were not made and all the claims presented were tried, our courts would be cluttered with personal injury and property damage claims, and not only the insurance company but also the insured would be subjected to unreasonable hazards in the verdicts of juries.

We have a rather unusual situation where all the averments of plaintiff's statement of claim are admitted to be true and correct except the final amount claimed by plaintiff.

Paragraph 3 of the statement of claim is as follows:

"3. The premium for said policy, pursuant to the terms thereof, was to be computed upon the basis generally referred to as 'Cost Plus Insurance', and the particular details with respect to the computation of the premium being set forth in the policy, a true and correct copy of that portion thereof being attached hereto and marked exhibit 'A'."

We have concluded that it is desirable to set forth exhibit A in full except the attestation paragraph.

## "COMPUTATION OF PREMIUM ENDORSE-MENT

"Upon delivery of this policy the named insured shall pay to the company a deposit premium of Eight Hundred Dollars $800.00 which shall be held by the company to be applied to the final premium adjustment after the expiration of the policy.

"At the end of each calendar month during the policy term the named insured shall render to the company a statement of the total gross receipts, whether collected or not, produced during such month from the business operations of the insured, and shall pay to the company at such time the Standard premium computed at a rate of $3.00 per $100.00 of such gross receipts whether collected or not.

"Upon termination of the policy the final standard premium for the entire policy term shall be computed

on the basis of the total gross receipts, whether collected or not, as hereinbefore described, for the term of the policy as determined by an audit of the books and records of the named insured at the Standard premium rates set forth above.

"In consideration of the agreement by the named insured to have the Retrospective Rating Plan applied to this policy, the company agrees to adjust the final Standard premium in accordance with the terms and conditions hereinafter set forth:

## "RETROSPECTIVE RATING PLAN

"The computation of the retrospective premium shall be based upon the following elements:

"1. STANDARD PREMIUM as used in the retrospective rating plan shall be the total amount of premium computed at a rate of $3.00 per $100.00 of gross receipts, whether collected or not.

"2. BASIC PREMIUM shall be 37½% of the Standard Premium.

"3. INCURRED LOSSES shall be the sum of (1) actual paid losses, (2) reserves established by the company in respect of claims or suits brought against the insured but not settled and (3) such loss adjustment expense as may be definitely assigned against specific losses. Such loss expense shall include attorney's fees, Witnesses fees, medical fees and other allocatable expenses, but it shall exclude the salaries of the company's personnel and its general overhead expenses incident to the investigation and settlement of claims.

"4. CONVERTED LOSSES shall be the incurred losses multiplied by 1.22.

"5. MINIMUM RETROSPECTIVE PREMIUM shall be the amount determined by applying a rate of $2.00 per $100.00 to the gross receipts, whether collected or not, upon which the Standard premium for the policy is based.

"6. MAXIMUM RETROSPECTIVE PREMIUM shall be the amount determined by applying a rate of $4.25 per $100.00 to the gross receipts, whether collected or not, upon which the Standard premium for the policy is based.

"7. RETROSPECTIVE PREMIUM is the sum of the BASIC PREMIUM plus the CONVERTED LOSSES. The retrospective premium is the premium for the policy, provided, however, that if such premium is less than the minimum retrospective premium, the minimum retrospective premium shall be the premium for the policy; and if such premium is more than the maximum retrospective premium, the maximum retrospective premium shall be the premium for the policy.

"8. CANCELLATION. In the event of cancellation of this policy, the following conditions apply: If the company cancels, the earned premium shall be determined on the basis of the actual earned Standard Premium, determined in accordance with the second paragraph of the foregoing Computation of Premium Endorsement, for the period this policy is in force. If the insured cancels, the earned Standard premium shall be determined on the short rate basis, subject to the Minimum and Maximum retrospective premiums.

(Attestation Paragraph)

## "COMPUTATION AND PAYMENT OF RETRO-SPECTIVE PREMIUM.

"The retrospective premium shall be computed at a date eight months following expiration of the policy and shall be based upon the incurred losses developed to a date six months following expiration of the policy. If the retrospective premium, thus computed, exceed the Standard premium paid to the company by the named insured, the named insured shall immediately pay the difference to the company; if it is less, the company agrees to refund the difference to the named insured,

subject to the Minimum and Maximum retrospective premium as hereinbefore outlined."

Paragraph 6 of the statement of claim reads as follows:

"6. The details relative to the computation of premium upon the aforementioned cost plus basis and pursuant to the provisions contained in the policy as set forth in exhibit 'A' hereof, are included in exhibit 'C' which is made a part hereof. The premium due for the policy period March 1, 1946, to March 1, 1947, is $4,018.85, said amount having been due as of September 1, 1947. This amount has not been paid and is still due and owing, although demand for the same has often been made by plaintiff upon defendant."

The amended answer with reference to this paragraph is as follows:

"6. In answer to the averments of paragraph 6 of the complaint, defendant admits that the details set forth in exhibit C, attached to the complaint, are correct. Defendant denies that the premium due for the policy period, March 1, 1946, to March 1, 1947, is $4,018.85, and denies that said amount has been due since September 1, 1947, and is still due and owing."

Exhibit C to which reference is made in both the statement of claim and answer is as follows:

## "COMPUTATION OF PREMIUM.

"(1) Standard premium $3 per hundred upon gross receipts of $321,507.75 .............. $ 9,645.23

"(2) Basic premium (pursuant to paragraph 2, Exhibit 'A') ... 37.5%

"(3) Basic premium computed in dollars ................. 3,616.96

"(4) Incurred losses paid as per Exhibit 'B' ................. 10,452.00

"(5) Loss conversion factor as per paragraph 4 of Exhibit 'A' .... 1.22

"(6) Converted losses in dollars (1.22 x $10,452) .......... 12,751.44

"(7) Indicated retrospective premium (line 3 hereof plus line 6 hereof) ................... 16,368.40

"(8) Minimum retrospective premium (gross receipts x $2 as per paragraph 5 of Exhibit 'a') 6,430.16

"(9) Minimum retrospective premium (gross receipts x $4.25 as per paragraph 6 of Exhibit 'A') ..................... 13,664.08

"(10) Actual retrospective premium (the basic premium plus the converted losses being in excess of the maximum premium—the premium is used as per paragraph 7 Exhibit 'A') .... 13,664.08

"(11) Premium due Indemnity Insurance Company of North America ($13,664.08 less $9,645.23 paid) .................... 4,018.85"

In the interpretation of the insurance contract now before us, it seems to us that our conclusion must be in favor of plaintiff. Plaintiff is not charged with any fraud, but merely of a mistake in determining a legal question of liability arising out of one accident.

We, of course, have heard of complaints on the part of insured persons that insurance companies at times declined to make settlements, which the insured thought were desirable, and that as a result the insured was sometimes subjected by the jury's verdict to payments greatly in excess of the maximum provisions of his policy.

We are met, however, with quite a different question here where the complaint is not that the insurance

company failed to make settlements within the maximum terms of its policy, but that it actually did make settlements in a way that relieved the insured of any liability to claimants. Defendant contends that he should have been consulted because the amounts paid by the insurance company to settle claims affected the amount of his premium, but it seems to us that he ignores the other possibility to which we have just referred, and also the fact that it is not to the interest of the insurance company to pay any larger sums and claims than the law and facts of the cases involved may require.

## The Waiver Question

The main argument on the part of defendant seems to be based on the contention that when he notified a representative of the insurance company that the Harden claims were not entitled to recover and was advised by the representative of plaintiff insurance company that no settlement of these claims would be made without notice to him, that this amounted to a waiver of the terms of the policy, which have been quoted above and which gave the insurance company the power to settle claims and furthermore provided that it should not be bound by any statements that were not contained in the policy itself by reason of notice to any agent or knowledge possessed by any agent.

We have not overlooked the large number of cases to which defendant's counsel have referred in their brief where waivers of terms of insurance policies have been upheld. The waivers referred to in most if not all of these cases refer to requirements of insurance policies imposed upon the insured and took place in cases where the insured was misled to his disadvantage by the statements of representatives of insurance companies. It seems to us, however, that these cases do not rule the question now before us.

We cannot see how a jury trial in this case would in any way help in determining the result. As we view it, the question is one of law and not of fact. Defendant thinks that he had a good defense to the claims arising out of one action because of the alleged contributory negligence of claimants in that case. The insurance company apparently thought otherwise and that the practical thing to do both for its own benefit and that of defendant was to make settlements in advance of trial. We think that this was their right under the insurance contract and that judgment on the pleadings should, therefore, be entered in favor of plaintiff.